UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SANDRA TURNER,
                            Plaintiff,

vs.                                                          Civil Action No. 12-cv-10693

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,
                            Defendant.

## DEFENDANT'S ANSWER

Defendant Massachusetts Institute of Technology ("MIT") answers the complaint filed by

plaintiff Sandra Turner as follows:

1.      MIT is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 1 and therefore those allegations are denied.

2.      MIT admits that it is a not-for-profit institution of higher learning and charitable

corporation organized under the laws of Massachusetts with its principal place of administration

at 77 Massachusetts Avenue, Middlesex County, Cambridge, Massachusetts.  MIT denies the

remaining allegations in paragraph 2.

3.      MIT admits that plaintiff was employed as a triage nurse for defendant MIT

Medical Center from August 15, 2005 until April 30, 2009.   MIT denies the remaining

allegations in paragraph 3.

4.      MIT admits that plaintiff received positive evaluations of her performance at

times during her employment and received increases in pay during her employment.  MIT denies

the remaining allegations in paragraph 4.

5.      MIT admits only that in the latter part of 2008, plaintiff told MIT that she had Crohn's disease and allegedly related symptoms.  MIT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 and therefore those allegations are denied.

6.      MIT admits that plaintiff requested and was granted an extended medical leave beginning on July 29, 2008.  MIT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6 and therefore those allegations are denied.

7.      MIT admits that, on or about August 18, 2008, it received a Leave of Absence request from the plaintiff in which she claimed that she had received a "new" diagnosis of Crohn's disease and requested leave from July 29, 2008 until mid-September 2008, which MIT granted.  MIT denies the remaining allegations in paragraph 7.

8.      MIT admits that, in or about October 2008, plaintiff requested to extend her leave and submitted medical documentation in support of that request.  MIT denies the remaining allegations in paragraph 8.

9.      MIT admits that on October 16, 2008 it advised plaintiff that her FMLA leave would end on October 21, 2008, not October 31, 2008.  MIT denies the remaining allegations in paragraph 9.

10.     MIT admits that plaintiff was provided with paid leave under MIT's Extended Sick Leave ("ESL") policy beginning on July 29, 2008 and that the ESL provides employees for up to twenty-six weeks of paid leave in a one-year period running concurrently with FMLA leave when an employee is unable to work due to illness. MIT denies the remaining allegations of paragraph 10.

11.     MIT admits only that plaintiff's submitted Medical Certification Forms to MIT from two health care providers on or about November 19, 2008 which provided different prognoses for the plaintiff's return.  In one form, one health care provider stated he "felt" that the plaintiff could return to work "part-time (1/2 time)" on December 1, 2008 and could then return "full-time by December 8, 2008."  In the other form, a different health care provider offered a different perspective, stating that plaintiff would need to work "1/2 time" starting on December 1, 2008 for *two* weeks and could then return full-time starting on December 15, 2008.  MIT denies the remaining allegations in paragraph 11.

12.     Denied.  Further answering, MIT states that it informed the plaintiff on November 20, 2008 that she could remain out of work – with full pay – until she had "fully recovered [and was] able to return to work in a full time capacity" since MIT already had a secure staffing plan in place to cover doctors and patients, to which plaintiff responded, "If you would like me to wait until [December] the 15th, I guess that is OK with me."

13.      MIT admits that plaintiff returned to work full-time on December 15, 2008, as her health providers had anticipated she would.  MIT denies any remaining allegations in paragraph 13.

14.     Denied, and further answering states that there were occasions during this period when plaintiff "reported" to work but then left work during the work day.

15.     MIT admits that, on or about April 30, 2009, MIT's Leave Administrator received a Medical Certification Form from plaintiff's health care provider dated April 23, 2009 stating that she had Crohn's disease and that the "present flare began 3/13/09."  MIT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 and therefore those allegations are denied.

3

16.     Denied.

17.     MIT admits only that on March 23, 2009 plaintiff briefly returned to work.  MIT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and therefore the remaining allegations in paragraph 17 are denied.

18.     MIT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and therefore those allegations are denied.

19.     MIT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore those allegations are denied.

20.     MIT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and therefore those allegations are denied.

21.     MIT admits that on March 27, 2009, plaintiff was asked to attend a meeting on Monday, March 30, 2009 with Janice McDonough, Kris Ruzycki, and Winnie Dansby and that Ms. Dansby worked in human resources.  MIT denies the remaining allegations in paragraph 21.

22.     MIT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 and therefore those allegations are denied.

23.     Admitted.

24.     Denied.

25.     MIT admits that during the March 30, 2009 meeting Mr. Muti discussed plaintiff's absences in 2008 and 2009, but denies that Mr. Muti "stated that he was shocked" by the absences.  MIT denies the remaining allegations in paragraph 25.

26.     MIT admits that at some point during the March 30, 2009 meeting plaintiff stated that she had been out on medical leave from July 29, 2008 to December 15, 2008.  MIT denies the remaining allegations in paragraph 26.

27.      MIT admits that at some point during the March 30, 2009 meeting plaintiff stated that her recent absences were the result of a "flare up" of her Crohn's disease and that she felt that her treatments were working and that she would be able to get back to work.  MIT denies the remaining allegations in paragraph 27.

28.      MIT admits that during the March 30, 2009 meeting Mr. Muti addressed the plaintiff's absenteeism in part as a performance issue, as well as a circumstance that had a negative impact on patient care and her colleagues.  MIT denies the remaining allegations in paragraph 28.

29.      Denied.

30.      MIT admits that during the March 30, 2009 meeting Mr. Muti stated in response to an inquiry from the plaintiff, that if events developed to the point that plaintiff's termination was warranted, MIT would likely afford her the opportunity to resign, and that some employees choose to resign in such circumstances because it looks better.  MIT denies the remaining allegations in paragraph 30.

31.      MIT admits that during the March 30, 2009 meeting Mr. Muti stated that future absences by plaintiff *could* result in termination, not that they *would* result in termination, and he asked that, for future absences, the plaintiff notify the front desk so that her patients could be contacted, speak to Ms. McDonough (Internal Medicine Coordinator) or Ms. Ruzycki (Director of Nursing) on the day of her absence, and provide a doctor's note upon her return.  MIT denies the remaining allegations in paragraph 31.

32.      MIT denies that Mr. Muti "harangue[d]" the plaintiff or "intimidated" her during the March 30, 2009 meeting.  Further answering, MIT states that plaintiff was quite serious and

asked questions during some points of the March 30, 2009 meeting and that she cried at other

points.  MIT denies any remaining allegations in paragraph 32.

33.     MIT admits that during the March 30, 2009 meeting plaintiff stated that she had a

Remicade treatment scheduled for April 10, 2009 and asked if attending her appointment would

result in her termination, and that Ms. Ruzycki assured the plaintiff that was not the case as her

absence on that date had already been approved and coverage had been planned.  MIT denies any

remaining allegations in paragraph 33.

34.     MIT admits that during the March 30, 2009 meeting plaintiff initially said that she

did not want to discuss MIT's long term disability ("LTD") benefits but then changed course and

asked Mr. Muti to tell her about such benefits, and that Mr. Muti then provided plaintiff with

general information regarding the Institute's LTD benefits.  MIT denies the remaining

allegations in paragraph 34.

35.     MIT denies the first sentence of paragraph 35.  MIT denies that Mr. Muti ever

said or suggested that "all [plaintiff's] options result in termination" (although plaintiff

incorrectly claimed that was what he was "telling [her]"), and further answering states that he

discussed a number of scenarios by which plaintiff's employment at MIT could continue.  MIT

denies the remaining allegations in paragraph 35.

36.     Admitted.

37.     MIT admits the first sentence of paragraph 37.  With respect to the second

sentence, MIT admits Ms. Ruzycki discussed with the plaintiff the feasibility of obtaining

coverage for her if she worked four days a week or less, and Ms. Ruzycki stated, among other

things, that the MIT Medical's budget had been significantly cut over the past several years and

that they did not have monies in the budget for per-diem triage nurses at the time, and that, in

any event, per diem nurses would not have the expertise and skills to fully perform the plaintiff's job, especially with respect to managing patients on anti-coagulation therapy.  MIT denies the remaining allegations in paragraph 37.

38.     MIT admits that during the March 30, 2009 meeting plaintiff suggested the possibility of a job share with another nurse, but denies that Ms. Ruzycki summarily "rejected" the suggestion by asserting "no, tried it before, won't work."  Further answering, MIT states that Ms. Ruzycki discussed the option and addressed a number of reservations about it, including problems with ensuring continuity of patient care and maintaining support for clinicians and the difficulty in recruiting a nurse to work just one or two days a week, because such a position would not offer benefits.  Ms. Ruzycki also described prior problems with purported "job share" situations in which nurses failed to cover for each other, despite prior assurances that they would, among other issues.  MIT denies all remaining allegations in paragraph 38.

39.     MIT admits only that during the March 30, 2009 meeting plaintiff suggested that MIT use per diem nurses to cover her days off for treatments and any future flare ups.  Further answering, MIT states that Ms. Ruzycki discussed with the plaintiff the feasibility of this option, and Ms. Ruzycki stated, among other things, that the MIT Medical's budget had been significantly cut over the past several years and that they did not have monies in the budget for per-diem triage nurses at the time, that it was very difficult to get per diem nurses on short notice (as in the case of a "flare up"), and that, in any event, per diem nurses would not have the expertise and skills to fully perform the plaintiff's job with respect to managing patients on anti-coagulation therapy.  MIT denies the remaining allegations in paragraph 39.

40.     MIT admits that during the March 30, 2009 meeting Mr. Muti stated that MIT was only required to accommodate reasonable requests and that plaintiff expressed hope that she

would be stable if and when the treatments she was receiving had taken effect.  MIT denies the remaining allegations in paragraph 40.

41.     MIT admits only that at some point after the March 30, 2009 meeting, plaintiff was provided a written warning, which speaks for itself and which the plaintiff has mischaracterized in her Complaint.  MIT denies the remaining allegations in paragraph 41.

42.     Denied.

43.     MIT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 and therefore those allegations are denied.

44.     MIT is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and therefore those allegations are denied.

45.     Denied.

46.     MIT admits that it issued plaintiff a termination notice on or about April 30, 2009. MIT otherwise denies the allegations in paragraph 46.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     MIT admits that Ms. Ruzycki and Ms. McDonough are nurse practitioners and that Ms. Ruzycki is generally aware that Crohn's disease is a chronic condition.  MIT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52 and therefore those allegations are denied.

53.     MIT denies the allegations of paragraph 53 as they relate to Ms. Ruzycki.  MIT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 and therefore those allegations are denied.

54.     MIT denies the allegations of paragraph 54 as they relate to Ms. Ruzycki.  MIT is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54 and therefore those allegations are denied.

55.     Denied.

55.     (Plaintiff's second paragraph 55).  MIT admits that at the time of her termination plaintiff had 17 accrued vacation days remaining.  MIT denies the remaining allegations of in plaintiff's second paragraph 55.

55.     (Plaintiff's third paragraph 55).  Denied.

56.     Denied.

57.     Denied.

58.     MIT denies that it refused to consider plaintiff's request to work four days a week or less and states that Ms. Ruzycki discussed the feasibility of that request with plaintiff.  MIT admits that plaintiff was initially hired on a four-day schedule when she began employment in August 2005, but further answering states she moved to a full-time position in November 2007. MIT denies the remaining allegations of paragraph 58.

59.     MIT is without knowledge or information sufficient to form a belief as to the truth of the speculative allegations in paragraph 59 and therefore those allegations are denied.

60.     MIT admits only that, during the March 30, 2009 meeting, she and MIT's representatives discussed the feasibility of her requests to work on a part-time basis (4 days or

less) or "job share" with another nurse and her suggestion that MIT use per diem nurses to cover her absences.  MIT denies the remaining allegations in paragraph 60.

61.     Denied.

62.     MIT denies that it has engaged in any unlawful or discriminatory conduct and denies all remaining allegations in paragraph 62.

63.     MIT is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 as to the timing of the filing of the plaintiff's charge with the MCAD and the EEOC and therefore those allegations are denied.

## COUNT I
### (Violations of 42. U.S.C. §12101 et seq.)

64.     MIT reincorporates its answers to paragraphs 1 through 63 above as if fully set forth herein.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

## COUNT II
### (Violation of M.G.L. A. c. 151B §4(16))

69.      MIT reincorporates its answers to paragraphs 1 through 68 above as if fully set forth herein.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

### COUNT III
**(Federal Retaliation Claim)**

76.     MIT reincorporates its answers to paragraphs 1 through 75 above as if fully set forth herein.

77.     Denied.

78.     Denied.

79.     Denied.

### COUNT IV
**(State Retaliation Claim)**

80.     MIT reincorporates its answers to paragraphs 1 through 79 above as if fully set forth herein.

81.     Denied.

82.     Denied.

83.     Denied.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

At all material times hereto, MIT acted reasonably, in good faith, and in accordance with its legal duties, rights and obligations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by a failure to mitigate her damages.

## FOURTH AFFIRMATIVE DEFENSE

Certain of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies, or to comply with all jurisdictional prerequisites and conditions before filing this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations.

## SIXTH AFFIRMATIVE DEFENSE

If the Plaintiff has incurred damages, which is expressly denied, such damages were caused solely by the Plaintiff's own conduct, precluding recovery.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because she failed to utilize the procedures and/or policies that had been implemented by the defendant to prevent and redress the alleged acts and omissions giving rise to her claims.

**WHEREFORE,** Massachusetts Institute of Technology respectfully requests that this Court:

1.      Dismiss Plaintiff's action in its entirety;

2.      Award MIT its costs of suit; and

3.      Award MIT such other and further relief as the Court deems just and proper.

## JURY DEMAND

MIT demands a trial by jury on all issues so triable.

**MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**
By its Attorney,

/s/ Scott A. Roberts
Scott A. Roberts (BBO# 550732)
R. Liliana Palacios-Baldwin (BBO#640786)
Hirsch Roberts Weinstein LLP
24 Federal Street, 12th Floor
Boston, MA 02110
Dated: May 18, 2012            (617) 348-4300

**CERTIFICATE OF SERVICE**

    I, Scott A. Roberts, hereby certify that this document(s) was filed through the ECF system on May 18, 2012, and as a result will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Scott A. Roberts
Scott A. Roberts